| | |
|---|---|
| **US District Court of Colorado**<br>Alfred A. Arraj United States Courthouse<br>901 19th St.<br>Denver, CO 80294<br><br>**Plaintiffs:**<br>Woodland Park Education Association<br>Nathaniel Owen, President of Woodland Park Education Association<br><br>v.<br><br>**Defendants:**<br>Woodland Park School District and Woodland Park Board of Education | <br><br><br><br><br>▲COURT USE ONLY▲<br><br><br>Case Number:<br><br>Division: |
| Attorney for the Plaintiff:<br>Michelle Gibson, #49161<br>Rory Herington, #40024<br>Kris Gomez, #28039<br>Colorado Education Association<br>1500 Grant Street<br>Denver, Colorado 80203<br>(303) 837-1500<br>Fax: (303) 861-2039<br>mgibson@coloradoea.org<br>rherington@coloradoea.org<br>kgomez@coloradoea.org | |

### COMPLAINT AND REQUEST FOR DECLARATORY JUDGEMENT AND INJUNCTIVE RELIEF

The Plaintiffs, Woodland Park Education Association and Nathaniel Owen, President of the Woodland Park Education Association, by and through their attorneys, hereby files this Complaint and Request for Declaratory Judgment and Injunctive Relief against the Woodland Park School District and Woodland Park Board of Education and states in support thereof as follows:

## NATURE OF THE ACTION

This Complaint for Declaratory Judgment, Injunctive Relief, and other claims ("Complaint") challenges recent actions taken by Defendants under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution, and state law. It is brought to remedy violations of the constitutional rights of Plaintiffs' members. A Motion for Preliminary Injunction and in Support of Complaint will be filed forthwith. In both pleadings, Plaintiffs allege that the Defendants exceeded their constitutional and statutory authority by establishing and implementing District policy, KDDA – Press Releases, Conferences, and Interviews. Furthermore, Plaintiff alleges that Woodland Park School Board and School District violated Colorado's Open Meeting Law when enacting changes to District policy. Plaintiff additionally alleges that Defendants violated Plaintiff WPEA members' constitutional right to Free Association under the First Amendment of the United States Constitution and Articles II and X of the Colorado Constitution by forcing members of Plaintiff to join the Professional Association of Colorado Educators, a political, partisan group. Defendants' actions also violated a variety of Colorado laws.

## PARTIES

1.    Plaintiff Woodland Park Education Association ("WPEA") is a labor union representing members who are comprised of teachers and other licensed professionals and non-management employees of Woodland Park School District ("School District"). WPEA has associational standing to sue on behalf of its members because those members have standing to sue in their own right; because WPEA's interests in preserving the rights of its members and ensuring that schools of Woodland Park School District are operated in a lawful manner are germane to its organizational mission; and because the relief requested in this lawsuit does not require the participation of individual members. In addition to associational standing, separately WPEA also has taxpayer standing. Colorado permits broad taxpayer standing.[1] The School District uses Plaintiffs' tax dollars to operate and fund its programs. Because the School District is using taxpayer dollars in an unconstitutional manner, Plaintiffs have demonstrated a clear nexus sufficient to confer taxpayer standing.[2]

2.    At all times relevant, Plaintiff Nathaniel Owen ("Owen") is the elected President of WPEA. Mr. Owen is a teacher and employee of Woodland Park School District.

---

[1] *Nash v. Mikesell*, 507 P.3d 94 (Colo. App. 2021).
[2] *Id.* at 98.

3.      Defendant Woodland Park School District ("School District") is a local school district in Woodland Park, Colorado. It operates five schools. The School District educates about 1,800 students, employs about 130 classroom teachers and approximately 166 non-teaching staff. The business address and office of the School District is Woodland Park, Teller County, State of Colorado.

4.      Defendant Woodland Park Board of Education ("Local Board") is the elected body, duly constituted, and existing pursuant to applicable Colorado laws, with overall authority for the operation and management of the School District, which includes promulgating board policies which govern School District employees, including WPEA members. The Local Board's schools and administrative offices are in Woodland Park, Teller County, State of Colorado.

5.      Colorado law provides "broad taxpayer standing in the trial and appellate courts."[3]

6.      "[T]axpayers have standing to seek to enjoin an unlawful expenditure of public funds."[4]

7.      "[E]ven where no direct economic harm is implicated, a citizen has standing to pursue his or her interest in ensuring that governmental units conform to the state constitution."[5]

## JURISDICTION AND VENUE

8.      This action arises under the United States Constitution, particularly the First and Fourteenth Amendments; and under federal law, particularly 28 U.S.C. §§ 1932 and 1988.

9.      This action also arises under the Colorado Constitution, particularly Articles II and X.

10.     This Court is vested with original jurisdiction over these federal claims by operation of 28 U.S.C. §§ 1331 and 1343.

11.     This Court is vested with supplemental jurisdiction over these state law claims by operation of 28 U.S.C. § 1367(a).

12.     This Court is vested with authority to grant the requested declaratory judgment by operation of 28 U.S.C. §§ 2201 and 2202, and pursuant to Federal Rule of Civil Procedure 57.

---

[3] *Barber v. Ritter*, 196 P.3d 238, 246 (Colo. 2008) (citing *Ainscough v. Owens*, 90 P.3d 851, 856 (Colo. 2004)).
[4] *Id*. (citing *Nicholl v. E-470 Pub. Highway Auth.*, 896 P.2d 859, 866 (Colo. 2008)).
[5] *Nicholl*, 896 P2d. at 866.

13.    This Court is authorized to issue the requested injunctive relief pursuant to 42 U.S.C. §1983 and Federal Rule of Civil Procedure 65.

14.    This Court is authorized to award attorneys' fees pursuant to 42 U.S.C. § 1988.

15.    Venue is proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391(b), because the events giving rise to the claim(s) occurred within the district.

## FACTUAL ALLEGATIONS

16.    The allegations set forth in paragraphs 1-15 of this Complaint are incorporated herein by reference.

17.    Every public school district is governed by a local board of education, which consists of board members as prescribed by law. Local boards of education possess all powers and duties delegated to them by law, and they are required to perform all duties set forth by law.[6]

18.    Local boards of education are required to, *inter alia*, determine the educational programs to be carried on in the schools of the district; employ all personnel required to maintain the operations of the district and carry out the educational program; and to determine the length of time the schools of the district will be in session.[7]

19.    Each local board of education has the specific duty "[t]o adopt policies and prescribe rules and regulations necessary and proper for the efficient administration of the affairs of the district".[8]

20.    The local board of directors "have control of instruction in the public schools of their respective districts."[9]

21.    Inherent within the policies that the School Board adopts, and the School District implements, is the requirement that School Board policies comply with existing state, federal, and local laws, and regulations.[10]

---

[6] C.R.S. § 22-32-108.5(1)(a).
[7] C.R.S.. § 22-32-109(1).
[8] C.R.S. § 22-32-109(1)(b).
[9] Colo. Const. art. IX, § 15.
[10] *See e.g.*, Exhibit 1.

4

*The District's Unconstitutional Restraint on Speech and Violation of Colorado's Open Meetings Law*

22.    Woodland Park Board of Education is responsible for promulgating and amending School District policies. Under this authority, the Local Board amended School District Policy  KDDA – Press Releases, Conferences, and Interviews which governs District employees' communications with the press and personal posts on social media.

23.    Prior to February 23, 2023, KDDA policy read as follows:

It is important that information about the activities and problems of the schools be provided to the community in a way that will create and maintain a dignified and professionally responsible image for the school district.

Therefore, the procedures listed below shall be followed in giving official information to the news media:

1.  The superintendent shall be the official spokesperson for the district.

2.  News releases, which are of a district-wide nature or pertain to established district policy shall be the responsibility of the superintendent.

3.  The superintendent has established regulations for the dissemination of news releases pertaining to individual schools and athletics.[11]

24.    On February 23, 2023, the School District revised the KDDA policy to read as follows:

It is important that information about the activities and problems of the schools be provided to the community in a way that will create and maintain a dignified and professionally responsible image for the school district.

Therefore, the procedures listed below shall be followed in giving official information to the news media:

1. The superintendent shall be the official spokesperson for the district.

2. News releases, which are of a district-wide nature or pertain to established district policy shall be the responsibility of the superintendent.

---

[11] Exhibit 2.

3. No employee shall be interviewed by the media regarding school operations or student matters or offer quote without the prior written consent of the superintendent.

4. No social media posts regarding district or school decisions will be made by employees of the school district without prior written consent of the district communications office.

5. The superintendent has established regulations for the dissemination of news releases pertaining to individual schools and athletics.

6. Violation of this policy will be considered to be insubordination.[12]

25.    Upon information and belief, the District did not notify District employees of the revisions to the KDDA policy until March 6, 2023. On that date, the District sent an email to District staff informing them of the change in policy retroactive to February 23, 2023.[13] The policy was also updated on the School District website on an unknown date.

26.    The School District did not follow the requirements of the Colorado Open Meetings Law ("CMOL") or School District when it amended the KDDA policy.

27.    School Board Policy BE – School Board Meetings states "[a]ll meetings of three or more members of the Board at which any public business may be discussed or any formal action taken shall be open to the public at all times except for period in which the Board is in executive session. All such meetings will be properly noticed and minutes will be taken and recorded as required by law."[14]

28.    The School Board is a "local public body" governed by the Colorado Open Meetings Law, C.R.S. 22-61-102 ("COML"). It is therefore subject to all requirements of the COML applicable to local public bodies.[15]

29.    The COML declares that public business "may not be conducted in secret."[16]

---

[12] Exhibit 3.
[13] Exhibit 4.
[14] Exhibit 5.
[15] *See* C.R.S. §§ 24-6-402(1)(a), -402(2), -402)(4), -402(7), -402(8), and -402(9).
[16] C.R.S. § 24-6-401.

30.     The COML's "underlying intent" is to ensure that the public is not "deprived of the discussions, the motivations, the policy arguments and other considerations which led to the discretion exercised by the [public body]."[17]

31.     The Colorado Court of Appeals has declared that "[t]he purpose of the OML, as declared in § 24-6-401, C.R.S. 2006, is to afford the public access to a broad range of meetings at which public business is considered;  to give citizens an expanded opportunity to become fully informed on issues of public importance, and to allow citizens to participate in the legislative decision-making process that affects their personal interests."[18]

32.     Upon information and belief, the School Board did not follow its own policies or the requirements of the COML when it enacted the February 23 or March 6, 2023 revisions to board policy KDDA.

33.     There are no posted minutes or Agendas revealing how the March 6, 2023 change to KDDA policy came about, as there was no scheduled regular or special public meeting of the School Board where the School Board publicly addressed this issue.[19]

34.     It is unclear if the revisions to policy KDDA were made by the School Board itself or if the School Board delegated revising the policies to the superintendent, Ken Witt.

35.     A School Board is limited in what powers it can delegate to subordinate officers, such as a superintendent.[20]

36.     C.R.S. § 22-32-109 sets forth the mandatory duties of a School Board which the School Board cannot delegate.

37.     C.R.S. § 22-32-109 obligates School Boards to "adopt policies and prescribe rules and regulations necessary and proper for the efficient administration of the affairs of the district…"[21]

38.     C.R.S. § 22-32-109 does not allow a School Board to delegate these duties to a School District employee or administrator.[22]

---

[17] *Van Alstyne v. Housing Auth.*, 985 P.2d 97, 101 (Colo. App. 1998).
[18] *Walsenburg Sand & Gravel Co. v. City Council*, 160 P.3d 297, 299 (Colo. App. 2007) (citation omitted) (emphasis in original).
[19] Exhibit 6.
[20] *Fremont Re-1 School Dist. v. Jacobs*, 737 P.2d 816, 818 (Colo. 1987).
[21] C.R.S. § 22-32-109 (1)(b).
[22] *Fremont Re-1School Dist.* 737 P.2d at 818.

39.     In Board Policy BSR-3, the School District has unlawfully delegated to the Superintendent the ability to "establish all further policies" using "any reasonable interpretation of the Board's District Purpose Statement and Executive Expectations policies."[23]

40.     KDDA is a policy which prescribes rules and regulations necessary for the efficient administration of the affairs of the district.

41.     The School Board does not have the statutory authority to delegate the revision of the KDDA policy to the Superintendent.

42.     The School Board cannot circumvent the COML and statutory duties to make policy by diverting its statutory duties to the Superintendent.

43.     If the School Board's delegated the revision to the KDDA policy, it violated both C.R.S. § 22-32-109 and the COML.

44.     On March 7, 2023, the District notified District employees that the KDDA policy was changing yet again. On March 7, the policy was revised as follows:

> It is important that information about the activities and problems of the schools be provided to the community in a way that will create and maintain a dignified and professionally responsible image for the school district.
>
> Therefore, the procedures listed below shall be followed in giving official information to the news media:
>
> > 1. The superintendent shall be the official spokesperson for the district.
> >
> > 2. News releases, which are of a district-wide nature or pertain to established district policy shall be the responsibility of the superintendent.
> >
> > 3. No employee shall be interviewed by the media regarding school operations or student matters or offer quote without the prior written consent of the superintendent.
> >
> > 4. No social media posts regarding district or school decisions will be made by employees of the school district **in their capacity as employees** without prior written consent of the district communications office.

---

[23] Exhibit 7.

5.  The superintendent has established regulations for the dissemination of news releases pertaining to individual schools and athletics.

6.  Violation of this policy will be considered to be insubordination.[24]

45.    This School Board failed to comply with the requirements of its own policies or the COML when it revised KDDA policy on March 7th.[25] The policy change was not discussed or decided upon at a regular or special public School Board meeting.[26]

46.    The purpose of the COML is to prohibit government agencies, such as the School Districts, from making decisions and taking actions in secrecy.

47.    The KDDA policy amended on February 23, 2023, prohibits employees from being interviewed by the media regarding school operations or offer quote without the prior consent of the superintendent.[27]

48.    The KDDA policy amended on February 23, 2023, also prohibits employees from making social media posts regarding district or school decision without prior written consent of the district office.[28]

49.    The KDDA policy, amended on March 7, 2023, contained one change to the policy language from February 23, 2023. It added language to subsection 4 of the policy, "No social media posts regarding district or school decisions will be made by employees of the school district **in their capacity as employees** without prior written consent of the district communications office."[29]

50.    The KDDA policy, amended on March 7, 2023, continues to prohibit School District employees from being interviewed by the media regarding anything related to the School District or posting anything about the School District and their employment on social media, even if it is a matter of public concern.

51.    The Board has enacted a preemptive punitive policy against employees for engaging in speech about the school district and its operations. Employees who engage in protected speech will be subject to discipline, up to and including termination.[30]

---

[24] Exhibit 8.
[25] Exhibit 5.
[26] *See* Exhibit 6.
[27] Exhibit 3.
[28] Exhibit 3.
[29] Exhibit 8.
[30] Exhibit 9, Exhibit 3, Exhibit 8.

52.     The versions of the KDDA policies promulgated by the School District on February 23 and March 7, 2023, are unconstitutional prior restraints on speech in violation of the First Amendment to the United States Constitution.

53.     Prior restraints on speech are the most serious and least tolerable infringement of an individual's First Amendment rights. The Supreme Court has routinely held that prior restraints on protected speech are presumed to be constitutionally invalid.[31]

54.     Plaintiff Mr. Owen, as President of WPEA, often makes public comments at School Board meetings regarding teacher working conditions and WPEA's stance on matters of public concern regarding various actions the District has taken.[32]

55.     The revised District policy KDDA puts Mr. Owen in jeopardy if he makes any public comments regarding teacher working conditions and WPEA's stance on actions the District has taken because such speech could be deemed insubordinate and subject him to discipline up to and including termination.

56.     The School District's decisions regarding employee working conditions have caused media attention inviting media inquiries. Mr. Owen and other School District employees have not been able to make any public comment to news agencies about any of the stories run about the School District for fear of reprisal due to the policy.

*The District's Unconstitutional Violation of the First Amendment Right to Freedom of Association*

57.     On May 1, 2023, the School District announced that it would be providing all school-based District staff professional liability insurance through membership in the Professional Association of Colorado Educators ("PACE").[33]

58.     Membership in PACE is not optional for District employees.[34]

59.     PACE misrepresents itself by claiming to be a "non-profit, nonunion, and nonpartisan professional educator association in Colorado" and "committed to promoted academic and personal growth.[35]

---

[31] *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559, 559 (1976).
[32] *See* Exhibit 6 at pg. 2.
[33] Exhibit 10, Exhibit 11.
[34] Exhibit 10, Exhibit 11, Exhibit 12.
[35] Exhibit 11.

60.     PACE is a subsidiary of the Association of American Educators ("AAE").[36]

61.     PACE and AAE are *anti*-union organizations. These organizations exist as an alternative to unions and encourage teachers to leave unions and cancel union membership.[37]

62.     PACE and AAE tenets hold "that strikes, sick outs and other disruptions to education denigrate the teaching profession."[38] Legal strikes and other work stoppage activities are often used by unions as a method of last resort when an impasse is reached between educators and school administrations regarding working conditions.

63.     Despite claiming to be non-partisan, PACE and AAE adopt partisan positions on issues related to educators, such as supporting school choice and charter schools.[39] Exhibit 16 illustrates examples of the political speech that PACE and AAE engage in, such as strongly supporting school choice and charter schools.[40]

64.     PACE and AAE attribute their values and beliefs to their members.[41] For example, in Exhibit 17, PACE and AAE attributes its belief that school choice is a "vital component of the education reform movement" as a belief that its members also share.[42]

65.     Many WPEA members have attempted to opt out of the liability coverage and District administration has denied their request and informed staff that they cannot opt out of liability insurance through membership in PACE.[43]

66.     Plaintiffs' members do not want to be forced to join PACE because they do not agree with PACE as an organization, its goals, its political beliefs, its messaging, or its purpose nor do they want to receive its propaganda.

67.     Upon information and belief, other District staff do not want to be forced to join PACE because they do not agree with PACE as an organization, its goals, its political beliefs, its messaging, or its purpose nor do they want to receive its propaganda.

---

[36] Exhibit 14.
[37] Exhibit 15.
[38] *Id.*
[39] Exhibit 17.
[40] *Id.*
[41] *Id* at pg. 7. "Like our members, AAE knows that school choice is a vital component of the education reform movement."
[42] *Id.*
[43] Exhibit 10 and 12.

68.    While most free speech cases involve restrictions on what can be said, measures compelling speech are at least as threatening to the right to free speech as restrictions on speech.[44]

69.    When speech is compelled, individuals are coerced into betraying their convictions. "Forcing free and independent individuals to endorse ideas they find objectionable is always demeaning… a law commanding 'involuntary affirmation' of objected-to beliefs would require 'even more immediate and urgent grounds' than a law demanding silence."[45]

70.    C.R.S. § 22-61-102 prohibits School Districts from requiring teachers to become a member of any group or organization.[46]

71.    Freedom Foundation, a political think tank whose goal is "battling the entrenched power of left-wing government union bosses who represent a permanent lobby for bigger government, higher taxes, and radical social agendas"[47] and actively encourages union members to leave the union has sent out postcards to Woodland Park employes encouraging them to leave WPEA and alleging that the District provided PACE liability insurance provides the same benefits and WPEA membership.[48]

*The District's Misuse of Taxpayer Funds*

72.    Woodland Park School District is part of Colorado's uniform system of free public schools throughout the state.[49]

73.    As a public school, the School District receives taxpayer funding through a variety of sources, including the Public School Finance Act of 1994.[50]

74.    The School District has stated all school-based educators will be compelled to accept PACE liability insurance as a benefit without the ability to decline. The District has

---

[44] *Janus v. AFSCME*, Council 31, 138 S. Ct. 2448, 2463-2464 (2018).
[45] *Id* at 1628 (citations omitted).
[46] C.R.S. § 22-61-102.
[47] Freedom Foundation, *Who We Are,* https://www.freedomfoundation.com/about-freedom-foundation/ (last visited August 2, 2023).
[48] Exhibit 16
[49] Exhibit 18.
[50] *Colorado Public School Finance*, Colorado Department of Education, https://www.cde.state.co.us/communications/copublicschoolfinance#:~:text=TOTAL%20PROGRAM%20FUNDING&text=The%20total%20amount%20each%20school,taxes%20(vehicle%20ownership%20taxes) (last visited June 27, 2023).

stated that educators can decline the other benefits of PACE membership, but not the liability insurance. This means that educators will be compelled members of PACE.[51]

75.    In the 2023 legislative session, Colorado lawmakers clearly informed school districts that public employees have a right to "join… or **refrain from joining or assisting** an employee organization."[52]

76.    C.R.S. § 22-32-109(b) requires school districts to "adopt policies and prescribe rules and regulations necessary and proper for the efficient administration of the affairs of the district, including procedures for competitive bidding in the purchase of goods and services…"[53]

77.    The requirements of C.R.S. § 22-32-109(b) are incorporated into School Board Policy DJE, which states, "All contractual services and purchases of supplies, materials, and equipment in the amount of $10,000 or more will be put to bid."[54]

78.    Upon information and belief, the School District contracted with PACE without taking any other bids on liability insurance.

79.    Upon information and belief, the School District will employ approximately 296 school-based educators for the 2023-2024 school year.

80.    Upon information and belief, the District purchased the PACE membership for $198.00 annually per educator.[55]

81.    Upon information and belief, the PACE membership for all school-based educators will cost the School District approximately $39,798 for the 2023-2024 school year.

82.    Upon information and belief, the School District will be paying for the PACE memberships with taxpayer funds.

83.    Spending taxpayer money to force employees to associate with a political organization is a misuse and unlawful expenditure of public funds.

84.    Defendant Woodland Park Board of Education, as duly elected board members to Woodland Park School District, have authorized payment for PACE membership

---

[51] Exhibit 10, Exhibit 11, Exhibit 12.
[52] C.R.S. §29-33-104(1)(d), effective Aug. 8. 2023.
[53] C.R.S. § 22-32-109(b).
[54] Exhibit 13.
[55] Exhibit 19.

from public funds for its employees, including WPEA members, for the 2023-2024 school year.

85.     The Colorado Constitution Article II, Section 10 enshrines the right to free speech for Colorado citizens.[56]

86.     By using taxpayer money to fund compelled membership in PACE, a political organization, Defendants violate the right to free speech as guaranteed by the Colorado and federal constitutions.

## FIRST CAUSE OF ACTION

(Violation of the Free Speech Clause of the First Amendment and 42 U.S.C. § 1983 as to Plaintiff WPEA against all Defendants)

87.     The allegations of paragraphs 1 through 85 are realleged and incorporated herein by reference.

88.     Pursuant to the First Amendment of the United States Constitution, as made applicable to the states in the Fourteenth Amendment of the United States Constitution, members of Plaintiff WPEA are entitled to freedom of speech.

89.     The First Amendment protects teachers' right to speak when they are speaking as a private citizen on a matter of public concern.

90.     Defendants' actions in enacting the February 23 and March 7, 2023, KDDA School District policy have violated the First Amendment of the United States Constitution by creating an unconstitutional prior restraint on speech.

91.     Furthermore, Defendants have unconstitutionally chilled Plaintiff WPEA's members right to free speech by implementing School District policy KDDA because educators face discipline, up to and including termination, if they violate the unconstitutional policy.

92.     School District policy KDDA is an unconstitutional restraint on speech because it limits Defendants' employees from commenting publicly on matters of public concern related to their employment.

---

[56] Colo. Const. art. II, § 10.

93.     Defendants' policy gives unbridled discretion to District officials to decide what forms of expression its employees are permitted to engage in at the whim of the officials.

94.     Defendants, their agents, servants, employees, and each of them, have, under the color of state law, conspired to violate Plaintiff's constitutional rights to free speech by enacting School District Policy KDDA.

95.     Defendants' unconstitutional policy of KDDA has chilled Plaintiffs' ability to engage in free speech regarding their employment as citizens on matters of public concern.

96.     WPEA members who engage in constitutionally protected speech about matters of public concern regarding the school district or its operations will be deemed insubordinate and subject to discipline, up to and including termination.

97.     By virtue of the premises set forth herein, Defendants have violated the First Amendment of the United States Constitution and 42 U.S.C. § 1983.

### SECOND CAUSE OF ACTION

(Declaratory Judgment Regarding School District Policy KDDA against all Defendants)

98.     The allegations of paragraphs 1 through 96 are realleged and incorporated herein by reference.

99.     This Court is empowered by 28 U.S.C. § 2201(a) and Fed. R. Civ. P. 57 to grant Plaintiff's request for declaratory relief.

100.    Plaintiff WPEA has an interest in protecting its members rights, status, or other legal relations is affected by the interpretation of said KDDA policy of February 23 and March 7, 2023.

101.    The actions of the Defendants were *ultra vires*, in excess of their legal authority and in violation of the First Amendment to the United States Constitution, and therefore null and void.

102.    The Plaintiffs are entitled to a judgement for declaratory relief and declarations that: the School District's KDDA policy of February 23 and March 7, 2023, was *ultra vires*, in whole or in part; and a violation of the First Amendment of the United States Constitution.

**THIRD CAUSE OF ACTION**

(Declaratory Judgement Regarding Forced Educator Membership in PACE against all Defendants)

103. The allegations of paragraphs 1 through 101 are realleged and incorporated herein by reference.

104. This Court is empowered by 28 U.S.C. § 2201(a) and Fed. R. Civ. P. 57 to grant Plaintiff's request for declaratory relief.

105. The actions of Defendants were *ultra vires* in excess of their legal authority and in violation of the First Amendment to the United States Constitution, and therefore null and void.

106. The Plaintiffs are entitled to a judgment for declaratory relief and declaration that the School District and School Board cannot compel educators to become a member of PACE and this requirement was *ultra vires*, in whole or in part, a violation of the First Amendment of the United States Constitution.

**FOURTH CAUSE OF ACTION**

(Violation of the Freedom of Association Clause of the First Amendment and 42 U.S.C. § 1983 against all Defendants)

107. The allegations of paragraphs 1 through 106 are realleged and incorporated herein by reference.

108. The First Amendment to the United States Constitution, as made applicable to the States by the Fourteenth Amendment to the United States Constitution, prohibits Defendants, as a state subsidiary, from prohibiting the Free Association of individuals.

109. The right to Free Association as guaranteed by the First Amendment also guarantees the right to refrain from associating.

110. Members of Plaintiff have a constitutional right under the First Amendment of the United States Constitution to freely associate, and refrain from association with political organizations they disagree with.

111. Forcing Defendants' employees to join PACE is an expressive association. PACE engages in political activity and speech on behalf of its members.

16

112. Defendants violate Plaintiff's right to freedom of association by forcing membership to a political organization on its employees.

113. Forcing PACE membership is not the least restrictive means of serving any compelling interest which Defendants seek to secure.

114. Defendants' forced membership of PACE for its employees violates Plaintiff's right to freedom of association as guaranteed by the First Amendment to the United States Constitution, as incorporated and applied to Defendants under the Fourteenth Amendment.

### FIFTH CAUSE OF ACTION
(Violation of the First Amendment as applied to Plaintiff Nate Owen against all Defendants)

115. The allegations of paragraphs 1 through 114 are realleged and incorporated herein by reference.

116. Pursuant to the First Amendment of the United States Constitution, as made applicable to the states in the Fourteenth Amendment of the United States Constitution, Plaintiff Nate Owen is entitled to freedom of speech.

117. Defendants' policy KDDA unconstitutionally limits Plaintiff Owen's right to freedom of speech.

118. As a result of KDDA, Mr. Owen has not been able to exercise his right to free speech in matters related to the School District, including but not limited to, making comments about School District actions and policies to the press or online via social media.

### SIXTH CAUSE OF ACTION
(Unlawful Expenditure of Taxpayer Money in Violation of Colo. Const. art. X, § 20 and art. II §10 and the First Amendment of the United States Constitution against all Defendants)

119. The allegations of paragraphs 1 through 118 are realleged and incorporated herein by reference.

120. Colorado taxpayers have standing to sue if they allege an injury based on unlawful expenditure of their taxpayer money or that their tax dollars are being used in an

unlawful manner.[57]

121.   Members of Plaintiff are taxpayers residing and paying taxes in Colorado.

122.   Defendant Woodland Park School District, as a School District, is funded through a variety of federal and state taxpayer dollars.

123.   Defendants, by spending taxpayer dollars on forced memberships of PACE for its educators, violates the Colorado Constitution, articles X and II.

124.   This action also violates the First Amendment of the United States Constitution, right to Freedom of Association.

125.   Paying for compelled membership of PACE is an unlawful expenditure of taxpayer money in violation of the Colorado and federal constitutions.

## SEVENTH CAUSE OF ACTION
### (VIOLATION OF C.R.S. § 22-61-102 against all Defendants)

126.   The allegations of paragraphs 1 through 125 are realleged and incorporated herein by reference.

127.   C.R.S. § 22-61-102 prohibits School Districts from requiring a teacher to become a member of or belong to any group or organization.

128.   By compelling its teachers to become members of PACE, Defendant Woodland Park School District unlawfully violated C.R.S. 22-61-102.

## EIGHTH CAUSE OF ACTION
### (VIOLATION OF C.R.S. § 29-33-1034 against all Defendants)

129.   The allegations of paragraphs 1 through 129 are realleged and incorporated herein by reference.

130.   C.R.S. § 29-33-104 prohibits School Districts employers from violating school district public employees' rights to refrain from joining or assisting an employee organization.

---

[57] *Jones v. Samora*, 395 P.3d 1165, 1172 (Colo. App. 2016).

131.  By compelling its teachers to become members of PACE, Defendant Woodland Park School District unlawfully violated C.R.S. §29-33-104.

## NINTH CAUSE OF ACTION
(VIOLATION OF C.R.S. 24-6-402 against all Defendants)

132.  The allegations of paragraphs 1 through 131 are realleged and incorporated herein by reference.

133.  Plaintiffs are Colorado citizens under the COML, C.R.S. § 24-6-402(9) and as such, has standing to bring a claim for declaratory and injunctive relief under the COML.

134.  The School Board circumvented the COML by diverting its statutory duties to the Superintendent which is not permitted by law.

135.  Plaintiffs have suffered an injury in fact because the Board acted in secrecy by adopting a punitive policy that subjects them to disciplinary action for exercising their constitutionally protected right to speak on matters of public concern regarding the School District or its operations.

136.  There is no record of when the decision to modify School District policy KDDA was made, discussed, or voted on by the School Board.

137.  Plaintiffs have suffered irreparable harm as a result of the School Board's practices described herein, by depriving them of information on when these policy changes were discussed and voted on by the School Board. Without this knowledge, Plaintiff cannot intelligently exercise their freedom of speech, petition, or association, which the COML guarantees.

## **PRAYER FOR RELIEF**

Wherefore, the Plaintiff respectfully requests that this Court:

A.  The Court enters judgement for the Plaintiffs and against the Defendants on the Plaintiffs' claims for relief.

B. Appropriate equitable relief, including but not limited to declaratory and injunctive remedies sought in this Complaint and the forthwith Motion for Preliminary Injunction, including the following:

    a. Strike the KDDA policy of February 23 and March 7, 2023, as unconstitutional.

    b. Declare that the Districts' employees have a constitutional right to make statements and social media posts about their employment as private citizens on matters of public concern, as allowed under the First Amendment.

    c. Declare that no employee who makes statements about their employment as private citizens on matters of public concern in accordance with the First Amendment may be disciplined, terminated, or otherwise be retaliated against for exercising their First Amendment rights in accordance with the law.

    d. Declare that the School Board and School District violated the COML when they discussed and adopted the changes to KDDA behind closed doors and without notice to the public.

    e. Nullify any action that Defendants have taken regarding the amended KDDA policies of February 23 and March 7, 2023, as null and void in violation of the COML.

    f. Declare any attempt of the School District to compel membership in PACE unconstitutional and an unlawful expenditure of taxpayer money.

    g. Prohibit the School District from forcing school-based educators to become members of PACE.

C. Find that Defendants violated C.R.S. § 22-61-102 and C.R.S. § 29-33-104.

D. Pay Plaintiffs' attorneys fees and costs related to this legal action as allowed by law for all such claims where available.

E. Such other and further relief as justice requires or the law permits.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated this 10th day of August 2023.

/s/ Michelle Gibson
Michelle Gibson, #49161
Rory Herington, #40024
Kris Gomez, #28039
Colorado Education
Association