**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-2037-GPG-MDB

WOODLAND PARK EDUCATION ASSOCIATION and
NATHANIEL OWEN,

Plaintiffs,

v.

WOODLAND PARK SCHOOL DISTRICT and
WOODLAND PARK BOARD OF EDUCATION,

Defendants.

---

**RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION**

---

Defendants the Woodland Park School District ("WPSD") and the Woodland Park Board of Education (the "Board" and collectively the "School District"), through counsel, Matthew J. Werner of Alpern Myers Stuart LLC, respond to the Defendants' – Woodland Park Education Association and Nathaniel Owen (collectively the "Union") – *Motion for Preliminary Injunction and in Support of Complaint* filed August 16, 2023, [ECF no. 7] (the "Motion") as follows:

**SUMMARY OF RESPONSE**

1. The Motion references two distinct disputes that fail on the merits and prevent the mandatory injunctive relief the Union seeks: (i) the Union's allegation of a prior restraint on its members' limited free speech rights and (ii) the Union's objection to the School District providing certain insurance benefits to its members. The Union members' limited constitutional interests do not require the School District, as employer,

to tolerate speech its representatives reasonably believe would disrupt its schools and undermine its authority. No action was taken by the Board, so Colorado's open meetings laws do not invalidate the disputed administrative policy. No Union member is being forced to join a competing union or associate with an objectionable organization. Additional insurance benefits are being provided by a third party to the employees of the School District.

## FACTS REQUIRING AN EVIDENTIARY HEARING

2. The School District is an approximately 2,000-student school district located in Woodland Park, Colorado.

3. The School District employs roughly 280 teachers. Perhaps 60 teachers are members of the Union.

4. Current members of the Board were elected in a school board election held in November 2021 and began serving in January 2022.

5. The current members of the Board have implemented changes in personnel and changes in curriculum that certain Union members oppose. See https://www.nbcnews.com/news/us-news/woodland-park-colorado-school-board-conservatives-rcna83311 and https://themaverickobserver.com/woodland-park-school-district-board-changes-school-district/.

6. The next election for the Board is set for November 2023.

7. As reported in the media, disaffected Union members and certain students and parents – encouraged by certain School District employees using school resources, citing private deliberative or confidential information learned in their roles as School

District employees, and with the imprimatur of being teachers – began protesting Board and administrative decisions as matters of personal interest. The School District does not object to School District employees commenting on matters of public concern, but objects to School District employees publishing deliberative and confidential information and commenting on matters of personal interest in their capacity as School District employees.

8. The superintendent of the School District modified *administrative* policy KDDA as alleged in the Motion. Administrative policy KDDA gives notice that specific kinds of unprotected speech and conduct would be considered insubordination. No action by the Board was taken or required.

9. The School District added personal liability insurance to its employee benefits package for the 2023-2024 school year. No employee was required to join a competing union or join any organization whatsoever. The School District contracted with the Professional Association of Colorado Educators ("PACE") to provide its employees with personal liability insurance without requiring a full PACE membership. Employees are not required to do anything for the personal liability insurance benefit from PACE.

10. PACE is a non-partisan organization that qualifies as a non-profit, IRS sec. 501(c)(6) professional association. See https://www.coloradoteachers.org/index.php/about-us.

11. On information and belief, the PACE benefit package has already been provided to School District employees and the benefit is in effect.

## ARGUMENT

### A. The Union Cannot Establish the Elements for the Extraordinary Remedy of an Injunction

12. The Motion does not meet any of the four prongs necessary to obtain an injunction. A preliminary injunction is "an extraordinary remedy" and "it should not be issued unless the movant's right to relief is clear and unequivocal." Kikumura v. Hurley, 242 F.3d 950, 955 (10th Cir. 2001) (internal quotation marks omitted). To show that the extreme remedy of a preliminary injunction should issue, "[a] party seeking an injunction from a federal court must invariably show that it does not have an adequate remedy at law." N. Cal. Power Agency v. Grace Geothermal Corp., 469 U.S. 1306, 1306, 105 S.Ct. 459, 83 L.Ed.2d 388 (1984).

13. Before a district court may issue a preliminary injunction pursuant to Rule 65, the movant must make four showings: (i) that the movant is likely to "suffer irreparable injury unless the injunction issues;" (ii) that "the threatened injury" to the movant if the court does not issue the preliminary injunction "outweighs whatever damage the proposed injunction may cause the opposing party;" (iii) that "the injunction, if issued, would not be adverse to the public interest;" and (iv) that "there is a substantial likelihood [of success] on the merits." Resolution Trust Corp. v. Cruce, 972 F.2d 1195, 1198 (10th Cir. 1992); see Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 19, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). The movant bears the burden of demonstrating all four prongs. See Automated Mktg. Sys., Inc. v. Martin, 467 F.2d 1181, 1183 (10th Cir. 1972).

14. Although a teacher's exercise of the constitutional right to speak on issues of public concern may not furnish the basis for dismissal from public employment,

Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Durango School District No. 9–R v. Thorpe, 614 P.2d 880 (1980), if a teacher speaks not upon matters of public importance, but rather as an employee upon matters of personal interest, such speech is not entitled to the same level of constitutional protection accorded to speech addressing matters of public concern. Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Speech on matters purely internal to public employment falls under this lessened standard of protection. Id.

15. In Hazelwood, public high school students wrote two articles for their school newspaper, one on teen pregnancy and the other on students whose parents had divorced. Hazelwood School District v. Kuhlmeier, 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988). As part of the regular practice at the school, the supervising teacher submitted the articles to the principal for approval prior to publication. Concerned over the content and timing of the articles, the principal deleted them from the newspaper.

16. In holding that the principal did not violate the students' First Amendment rights, the Supreme Court distinguished between "personal expression that happens to occur on the premises" and "school-sponsored ... expressive activities that students, parents, and members of the public might reasonably perceive to bear the imprimatur of the school." Hazelwood, 484 U.S. at 271. Concluding that the students' articles constituted school-sponsored expression, the Court held that educators could constitutionally regulate that form of student speech, so long as such regulation was "reasonably related to legitimate pedagogical concerns." Hazelwood, 484 U.S. at 273. Although Hazelwood dealt with student speech, its standard has been applied in cases

involving teacher speech and curriculum control. See Miles v. Denver Pub. Sch., 944 F.2d 773 (10th Cir. 1991).

17. Here, the Union's Motion fails to meet the four RTC-Winter prongs required to get the injunction it seeks. The Union's claim has no merit because in both ostensibly offending paragraphs, the ability of the employees to engage in protected speech is preserved. Paragraph 3 of policy KDDA prevents employees from engaging in interviews with, or providing quotations to media regarding "school operations or student matters." School operations and student matters are not matters of public concern and properly limited by the School District. The limited application of paragraph 3 to matters purely internal to public employment falls under Connick and the lessened standard of protection.

18. Likewise, paragraph 4 avoids protected speech by limiting its application to social media posts made in the "capacity as employees." This is proper and respectful limitation to prevent the posting of information that might reasonably be perceived to bear the imprimatur of the school. Paragraph 4 gives notice that an employee cannot post *as an employee* about matters of personal interest, consistent with Hazelwood. Nothing limits posts absent the imprimatur of a school employee.

**B. The Injunction Sought by the Union is the Disfavored Kind**

19. The injunction order sought in the Motion is disfavored in the Tenth Circuit in three ways. The limited purpose of a preliminary injunction "'is merely to preserve the relative positions of the parties until a trial on the merits can be held....'" Schrier v. Univ. of Colo., 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting Univ. of Tex. v. Camenisch, 451

U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)). In that vein, the Tenth Circuit has identified three specifically disfavored preliminary injunctions: (i) "preliminary injunctions that alter the status quo;" (ii) "mandatory preliminary injunctions," meaning injunctions that compel, rather than prohibit, activity on the part of the enjoined party; and (iii) "preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." Schrier, 427 F.3d at 1258 (quoting O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 977 (10th Cir. 2004) (internal quotation marks omitted); accord Westar Energy, Inc. v. Lake, 552 F.3d 1215, 1224 (10th Cir. 2009).

20. With respect to preliminary injunctions that will change the status quo, "the movant has an even heavier burden of showing that the four factors listed above weigh heavily and compellingly in movant's favor before such an injunction can be issued." Salt Lake Tribune Publ'g Co. v. AT & T Corp., 320 F.3d 1081, 1099 (10th Cir. 2003) (quoting SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1098–99 (10th Cir. 1991)) (internal quotation marks omitted). The Tenth Circuit has characterized an injunction as mandatory if the requested relief "'affirmatively require[s] the nonmovant to act in a particular way, and as a result ... place [s] the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction.'" Schrier, 427 F.3d at 1261 (quoting SCFC ILC, Inc., 936 F.2d at 1099). The Tenth Circuit held:

> Dr. Schrier's requested relief nonetheless "affirmatively require[s] the [University] to act in a particular way," [citation omitted], that is, to reinstall him as Chair of the Department of Medicine. Moreover, we agree with defendants that "reinstatement would place the court in position where it

> may have to provide supervision." [Citation omitted.] Thus, the relief sought here is properly characterized as mandatory and, as a result, constitutes a specifically disfavored injunction.

Schrier, 427 F.3d at 1261.

21. In O Centro, the *en banc* Tenth Circuit held that

> courts in this Circuit must recognize that any preliminary injunction fitting within one of the disfavored categories *must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course.* Furthermore, because a historically disfavored preliminary injunction operates outside of the normal parameters for interim relief, movants seeking such an injunction are not entitled to rely on this Circuit's modified-likelihood-of-success-on-the-merits standard. Instead, a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms, and may not rely on our modified likelihood-of-success-on-the-merits standard.

O Centro, 389 F.3d at 975-76 [emphasis added].

22. Here, the applied for injunction is mandatory in operation, changes the Pickering status quo, and is complete relief for the Union on the relevant claim. The Union wants this court to prospectively regulate the School District's discipline policy and communications to avoid *any* restraint on speech. Such is not the law. Under Pickering and its progeny, the School District can limit the speech of its employees to matters of public concern, outside of unreasonable places, without disclosing confidential or deliberative information, and to not make such protected speech in a capacity as a School District employee.

23. The Union effectively seeks a mandatory injunction akin to that rejected in Schrier to hamper the School District's ability to enforce lawful limitations on public

employee speech. Granting the injunction sought in the Motion puts this court in the disfavored position of supervising employee speech and discipline at the School District.

24. The Union's Motion also seeks the disfavored remedy of altering the status quo. The status quo is the Pickering regime. To grant the Union's Motion would require an injunction that would embolden dissident School District employees to make public statements on social media as official school representatives and to communicate through media interviews and submit quotations not limited in subject matter to matters of public concern. The injunction sought by the Union would limit the School District's ability to direct and govern its staff and subject any further policy revision or attempt at discipline to further supervision by this court.

25. There is no relief sought at trial that is not applied for in the Motion – meeting the third disfavored injunction order definition. The Union seeks a complete win on claims one (and also claim three) of its complaint [ECF #1].

**C. Without a Making a Strong Showing of Likelihood of Success, the Union is Not Entitled to a Presumption of Irreparable Harm**

26. Tenth Circuit decisions link the "irreparable injury" inquiry to the "likelihood of success" inquiry, holding that a plaintiff who cannot demonstrate a substantial likelihood of success is not entitled to a presumption of irreparable harm. See Schrier, 427 F.3d at 1266 ("Dr. Schrier has failed to demonstrate the requisite likelihood of success on his free speech and academic freedom claims. As a result, he is not entitled to a presumption of irreparable injury."). In Heideman v. S. Salt Lake City, 348 F.3d 1182 (10th Cir. 2003), the Tenth Circuit held that a mere assertion that the harm implicates

First Amendment claims is insufficient, as "[i]t is necessary, however, to consider the specific character of the First Amendment claim." 348 F.3d at 1190.

27. Here, the Union members cannot be presumed to suffer irreparable injury because policy KDDA does not prevent protected speech. As goes the merits of the constitutional claim, so goes the other prongs for an injunction. When the School District seeks to limit speech that is not protected, the Union members suffer no irreparable injury.

28. Similarly, the threatened injury to Union members is absent when the School District does not restrict protected speech. The School District faces significant employee dissent should the injunction be imposed during an election year and a tumultuous and contentious political climate. The Supreme Court and the Tenth Circuit have continually recognized the genuine interests a public employer has "in promoting the efficiency of the public services it performs through its employees." Connick, 461 U.S. at 142 (citing Pickering). The School District would be more disrupted and damaged by an injunction than the Union members would be served by it.

29. There are no public interests served by an injunction. School District employees are able to comment in all manner of forums on matters of public interest as private citizens. The letter to the editor type speech is protected with KDDA. The public will be informed. Public interest is unaffected by KDDA.

**D. The Adoption of Administrative Policy KDDA Was Not Unlawful**

30. The Motion incorrectly alleges that the Board enacted administrative policy KDDA. C.R.S. § 24-6-402(2) applies Colorado's Sunshine laws (open meetings) to gatherings of two or more members of a state or local governing body. It does not apply

to a superintendent making a unilateral administrative decision. No violation of Colorado's open meetings laws voids the policy enacted by the School District superintendent because the Board did not make the modifications to KDDA. Open meetings laws do not apply to administrative actions by the superintendent, acting alone.

**E. There is No Basis to Enjoin Additional Benefits Provided to School District Employees**

31. None of the allegations of forcing an association of School District employees in the Motion are supported by fact. School District administrators have gone to great lengths to provide a benefit to the employees that is free of teacher-reformer politics. The facts do not support any of the RTC-Winter prongs for an injunction.

32. Moreover, the controversy is moot – the benefit is already paid for and in effect. Courts recognize two kinds of mootness: constitutional mootness and prudential mootness. Rio Grande Silvery Minnow v. Bureau of Reclamation, 601 F.3d 1096, 1121–22 (10th Cir. 2010). Under the constitutional-mootness doctrine, a federal court has jurisdiction over only "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Arizonans for Official English v. Arizona, 520 U.S. 43, 67, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (internal quotation marks omitted).

33. Even if a case is not constitutionally moot, a court may dismiss the case under the prudential-mootness doctrine if the case "is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the *power* to grant." Fletcher v. United States, 116

F.3d 1315, 1321 (10th Cir. 1997). Prudential mootness generally applies only to requests for injunctive or declaratory relief. Rio Grande Silvery Minnow, 601 F.3d at 1122.

Defendants the Woodland Park School District and the Woodland Park Board of Education asks the Court to deny the Motion and decline to impose an injunction.

Dated this 1st day of September, 2023.

ALPERN MYERS STUART LLC

s/ Matthew J. Werner
By: Matthew J. Werner, CO#28940
14 North Sierra Madre Street
Colorado Springs, Colorado 80903
719-471-7957
E-mail: mattwerner@coloradolawyers.net
*Attorneys for Defendants the Woodland Park School District and the Woodland Park Board of Education*

**CERTIFICATE OF SERVICE**

I certify that on this 1st day of September, 2023, **RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION** was ☐ hand-delivered ☒ served through the Clerk of the Court using the CM/ECF system ☐ sent by facsimile ☐ sent by e-mail ☐ placed in the United States mail, postage pre-paid, addressed as follows:

Michelle Gibson, #49161
Rory Herington, #40024
Kris Gomez, #28039
Colorado Education Association
1500 Grant Street
Denver, Colorado 80203
(303) 837-1500
Fax: (303) 861-2039
mgibson@coloradoea.org
rherington@coloradoea.org
kgomez@coloradoea.org
*Attorneys for Plaintiffs Woodland Park Education Association Nathaniel Owen, President of Woodland Park Education Association*

s/ Jennifer Emerson