**FOR THE DISTRICT OF COLORADO**

Case No. 1:23- cv- 02037- MDB

**WOODLAND PARK EDUCATION ASSOCIATION and NATHANIEL OWEN,**

Plaintiffs,

v.

**WOODLAND PARK SCHOOL DISTRICT and WOODLAND PARK BOARD OF EDUCATION,**

Defendants.

---

# REPLY TO DEFENDANT'S RESPONSE TO THE MOTION FOR PRELIMINARY INJUNCTION AND IN SUPPORT OF COMPLAINT

---

Plaintiffs, Woodland Park Education Association and Nathaniel Owen, by and through undersigned counsel, hereby file this Reply to Defendant's Response to the Motion for Preliminary Injunction and In Support of the Complaint.

## I. Plaintiffs Have Established the Elements Required for a Preliminary Injunction Under Federal Rule of Procedure 65 Regarding Policy KDDA

Plaintiffs have established the elements of a Preliminary Injunction under Federal Rule of Procedure 65. A District Court may enter a preliminary injunction if "(1) the movant is substantially likely to succeed on the merits, (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest."[1]

### A. Plaintiffs Have Established They are Substantially Likely to Succeed on the Merits

In the Defendants' Response, Defendants argue that the Plaintiffs have not shown a strong likelihood of success and therefore are not entitled to a presumption of irreparable harm because Plaintiffs cannot show that policy KDDA prohibits protected speech. Defendant admits that "policy KDDA prevents employees from engaging in interviews with, or providing quotations to media regarding 'school operations or student matters.'"[2] Defendant claims that

---

[1] *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016) (quotations and alterations omitted).
[2] 15 – 2023.09.01 Response to Motion for Preliminary Injunction.

"[s]chool operations and student matters are not matters of public concern and properly limited by the School District." School operations and student matters are matters of public concern that Woodland Park School District ("School District" or "District") employees have a right to comment on as private citizens. "Matters of public concern are those of interest to the community, whether for social, political, or other reasons."[3] School operations and student matters are extremely broad topics. To completely silence School District employees on these topics violates their First Amendment rights to freedom of speech. In their Response, Defendants cited to several news articles about events that have occurred at the School District and the changes that the Woodland Park School Board ("School Board") has been making to school operations, student instruction, and student resources. These articles are about "school operations". These news articles demonstrate that these school operations are indeed a matter of public concern. Speech involves matters of public concern "when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'"[4] Furthermore, the School Board's decisions regarding school operations have caused significant teacher turnover, which is a matter of public concern. "[T]eacher turnover, is one in 'which the public would understandably be concerned.'"[5]

Policy KDDA is a prior restraint on speech which chills District employee's protected speech before it happens. Prior restraints on speech are the most serious and least tolerable infringement of an individual's First Amendment rights.[6] Preventing School District employees from publicly commenting on any matter which involves school operations or student matters places an unconstitutional gag order on School District employees.

Plaintiff Nate Owen has seen the District use the February 28, 2023 KDDA policy to terminate a District employee for exercising their First Amendment rights.[7] Mr. Owen attended the termination meeting of the employee, in which the backdated KDDA policy of February 28, 2023 was used to justify the employee's termination. This employee's termination has shown Mr. Owen and other District employees that the District can, and will, use the unconstitutional KDDA policy to terminate employees for commenting on matters of public importance as private citizens. This has further chilled Mr. Owen and WPEA's members from exercising their right to free speech.

Furthermore, the implementation of policy KDDA was in violation of state law, C.R.S. § 24-6-401, the Open Meetings Law. C.R.S. § 22-32-109 sets forth the mandatory duties of a School Board which the School Board cannot delegate. C.R.S. § 22-32-109 obligates School

---

[3] *Morris v. City of Colo. Springs*, 666 F.3d 654, 661 (10th Cir. 2012) (internal quotation marks omitted).
[4] *Snyder v. Phelps*, 562 U. S. 443, 453, 131 S. Ct. 1207, 1211, 179 L. Ed. 2d 172, 176 (2011) (citation omitted).
[5] *Wren v. Spurlock*, 798 F.2d 1313 (10th Cir. 1986), cert. denied, 479 U.S. 1085, 107 S. Ct. 1287, 94 L. Ed. 2d 145 (1987).
[6] *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559, 559 (1976).
[7] Upon information and belief, an employee has been terminated under policy KDDA. On or around March 1, 2023, an email was sent out to all staff of Woodland Park School District informing staff that 6th grade was being moved from the middle school to the elementary school. An employee posted notice of this change on social media. On Thursday, March 2, 2023, members of the community protested this change on public property outside of school grounds. On Friday, March 3, 2023, the employee was terminated for violating policy KDDA because she posted on social media about the change to 6th grade. On March 6, 2023, the District emailed the new policy KDDA to staff. The policy was backdated to February 28, 2023. This policy was then used as justification to terminate the employee.

Boards to "adopt policies and prescribe rules and regulations necessary and proper for the efficient administration of the affairs of the district…"[8] These duties cannot be delegated to a School District employee or administrator.[9] Defendant admits in its Response that the revision of policy KDDA was delegated to the superintendent.[10] This delegation was a violation of C.R.S. § 22-32-109. This violation of Colorado state law further supports Plaintiffs' request for a preliminary injunction.

**B. Plaintiffs Will Suffer Irreparable Injury if a Preliminary Injunction Is Not Issued**

Policy KDDA has caused irreparable injury to Plaintiffs. The policy prohibits Plaintiffs from being able to speak at School Board meetings, post information on social media, or make comments to the media on matters of public concern regarding their working conditions and learning environment of the students. The School Board's actions continue to draw the interest and attention of news media, but current employees of the School District cannot provide comment on these articles because they involve school operations.

**C. Plaintiff's Threatened Injury Outweighs the Injury the Defendants will Suffer Under the Injunction**

The Plaintiffs have made a strong showing that the balance of harms tips in their favor. In this case, Plaintiffs' injury is to their First Amendment rights to speak as private citizens on matters of public importance. "When a constitutional right hangs in the balance… 'even a temporary loss' usually trumps any harm to the defendant."[11] Because of the policy of KDDA, the employees of the Woodland Park School District have lost their First Amendment Right to comment as private citizens on matters of public concern regarding their employment. Plaintiffs suffer an irreparable injury every day the policy is in effect. It is clear the School District seeks to maintain teacher's silence in advance of the School Board election slated for November 2023, to protect their own interest in re-election and prevent democratic discourse.[12] The timeliness of political speech is particularly important and relevant to the Plaintiff's Motion for Preliminary Injunction. Allowing School District employees to have the ability to comment as private citizens on matters of public importance related to their employer would not cause harm to the District. The "only public employer interest that outweighs the employee's free speech is interest is avoiding direct disruption, *by the speech itself,* of the public employer's internal operations and employment relationships."[13] Allowing District employees to post on social media or give quote to news media on their own time, on matters of public importance would not cause direct disruption of the School District's internal operations or employment relationships.

---

[8] C.R.S. § 22-32-109 (1)(b).
[9] *Fremont Re-1 School Dist. v. Jacobs*, 737 P.2d 816, 818 (Colo. 1987).
[10] 15 – 2023.09.01 Response to Motion for Preliminary Injunction at page 10-11.
[11] *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 806 (10th Cir. 2019).
[12] 15 – 2023.09.01 Response to Motion for Preliminary Injunction at page 10, ¶ 28..
[13] *Duda v. Elder*, 7 F.4th 899, 912 (10th Cir. 2021) (citations omitted).

**D. Granting the Injunction is not a Disservice to the Public Interest**

The Court granting an injunction in this case would not be against the public interest, but in fact serve the public interest. The First Amendment right to Freedom of Speech is essential to our democracy. It is "always in the public interest to prevent the violation of a party's constitutional rights."[14] To allow policy KDDA to stand would condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression.[15]

## II. Plaintiffs Have Established the Elements Required for a Preliminary Injunction Under Federal Rule of Procedure 65 Regarding Compelled PACE Membership

The District's only argument that there is no basis to enjoin PACE Membership, relies upon their statement that "the benefit is already paid for and in effect," and thus, moot.[16] However, on information and belief, not only has the benefit been "bestowed" upon employees, the District has enrolled the employees in PACE membership.[17] Forcing "involuntary affirmation of objected to beliefs requires even more immediate and urgent and urgent grounds than a law demanding silence."[18] This type of violation is one that requires immediate and swift action requested by the Plaintiffs. PACE's mission is decidedly anti-union[19], a viewpoint that the Plaintiffs' do not endorse.

Neither constitutional mootness, nor prudential mootness, doctrines apply here. The case is very much an active "case" and "controversy," as stated above. To determine mootness, the "crucial question is whether granting a present determination of the issues offered will have some effect in the real world."[20] Ongoing or temporary membership in the PACE organization by unwilling members, has infringed on their First Amendment rights, and that case is at issue. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.[21] Therefore, this Court's determinations on this issue will have a real effect in the real world.

The District admittedly transferred funds to PACE on July 1, 2023. The evidentiary question remains whether or not that payment may be withdrawn, returned, or cancelled. Further, there is no reason to believe that the School District will not continue to expend funds annually if not enjoined. Prudential mootness may be invoked when the Court assesses a change in circumstances that renders the actions in question highly unlikely to be repeated.[22] Here, there is no such change in the course of the District's actions.

---

[14] *Free the Nipple-Fort Collins*, *916* F.3d at 807.
[15] *Connick v. Myers*, 461 U.S. 138, 142, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983).
[16] 15 – 2023.09.01 Response to Motion for Preliminary Injunction at page 11, ¶ 31..
[17] PACE's website, indicates the two million dollar liability insurance is a benefit of PACE membership. https://www.coloradoteachers.org/index.php/member-benefits
[18] *Janus v. AFSCME, Council 31*, 138 S.Ct. 2448, 2464 (2018) (internal quotations omitted).
[19] https://www.coloradoteachers.org/index.php/about-us/our-national-partner
[20] *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 (10th Cir. 2010)(quoting *Wyoming v. US Dep't of Agric*., 414 F.3d 1207, 1212 (10th Cir. 2005)).
[21] *Elrod v. Burns*, 427 U.S. 347, 373 (1971).
[22] *Fletcher v. United States*, 116 F.3d 1315, 1321 (10th Cir. 1997).

Enjoining the actions of the School District related to PACE benefits and membership, relates to an urgent and ongoing infringement of constitutional rights and a controversy that is not moot.

WHEREFORE, Plaintiff respectfully requests that this Court issue an injunction as requested herein and provide such other relief as the Court deems just.

Respectfully submitted this 11th day of September 2023.

/s/ *Michelle Gibson*
Michelle Gibson
Rory Herington
COLORADO EDUCATION ASSOCIATION
1500 Grant Street
Denver, Colorado 80203
Phone: (303) 837-1500
Fax: (303) 861-2039
Email: mgibson@coloradoea.org
rherington@coloradoea.org